IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.  16-CR-6071FPG

EMANUEL L. LUTCHMAN,

        Defendant.

---

## PLEA AGREEMENT

The defendant, **EMANUEL L. LUTCHMAN**, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to waive indictment and to plead guilty to a one-count Information, which charges a violation of Title 18, United States Code, Section 2339B(a)(1) (conspiracy to provide material support to a designated foreign terrorist organization), for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of life. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that, if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

### Conspiracy to Provide Material Support to ISIL

a. that an agreement existed between two or more persons to commit a violation of 18 U.S.C. § 2339B(a)(1), to wit, to provide material support and resources to a designated foreign terrorist organization, namely, the Islamic State of Iraq and the Levant (ISIL);

b. that the defendant knew of the existence of the agreement; and

c. that the defendant intended to participate in the unlawful agreement.

### Elements of 18 U.S.C. § 2339B(a)(1)

a. that the defendant knowingly provided material support or resources, that is, personnel, to a foreign terrorist organization, namely, ISIL;

b. that the defendant knew that the organization was a designated foreign terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism; and

c. that the defendant is a United States national.

# FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a. From in or about December 2015, and continuing until December 30, 2015, in Rochester, in the Western District of New York, and elsewhere, the defendant, **EMANUEL L. LUTCHMAN**, a citizen of the United States, knowingly combined, conspired and agreed with others, known and unknown, including an individual known as "Abu Issa Al-Amriki," to provide material support and resources, that is, personnel and services, to a designated foreign terrorist organization, namely, the Islamic State of Iraq and the Levant (ISIL), knowing that ISIL was a designated foreign terrorist organization, and had engaged, and was engaging, in terrorist activity and terrorism.

b. As detailed herein, LUTCHMAN – acting at the direction of an individual known as "Abu Issa Al-Amriki," a now-deceased ISIL member in Syria – planned to attack an individual or individuals with knives and a machete, in the name of ISIL, at Merchant's Grill in Rochester, New York, on New Year's Eve 2015. The purpose of the attack was to conduct an attack that could be claimed by ISIL and enable LUTCHMAN to prove himself to Al-Amriki and ISIL in order to gain membership into ISIL when he thereafter traveled overseas to join the terrorist organization.

### The Islamic State of Iraq and the Levant

c. On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq (AQI), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization (FTO) under Section 219 of the Immigration and Nationality Act. Subsequently, on May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the Immigration and Nationality Act to add the alias Islamic State of Iraq and the Levant (ISIL) as its primary name, and various other aliases, including the Islamic State of Iraq and Syria (ISIS), the Islamic State of Iraq and al-Sham, ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, and Dawla al Islamiya. To date, and throughout the time period relevant to this matter, ISIL has remained a designated FTO.

d. In an audio recording publicly released on June 29, 2014, ISIL announced a formal change of ISIL's name to the Islamic State (IS). Abu Bakr al-Baghdadi was and is the self-anointed "caliph" or leader of ISIL. Members of ISIL accept al-Baghdadi as their leader. On or about September 21, 2014, ISIL spokesman Abu Muhammad al-Adnani called for attacks

against citizens – military or civilian – of the countries participating in the United States-led coalition against ISIL.

### LUTCHMAN's Support of ISIL

e.   In late 2015, LUTCHMAN maintained two Facebook accounts and a Google+ account, which he used to, among other things, post expressions of support for ISIL, imagery relating to ISIL, and propaganda videos and digital versions of documents relating to ISIL and violent jihad. The profile pictures for the Facebook accounts included an insignia with the words "I am a Muslim and I Support Islamic State" around the black flag used by ISIL, and an image depicting a map of the Middle East bearing the name and symbols of ISIL. The profile picture for the Google+ account was an individual with the black flag used by ISIL with a group of what appear to be ISIL members wearing camouflage and carrying firearms, with the words "DAWLAT AL KHILAFAH ALISLAMIYAH," which is a reference to ISIL. LUTCHMAN downloaded and watched videos online that glorified terrorism in support of Islam, including videos relating to ISIL and Anwar al-Awlaki, the deceased leader of al-Qa'ida in the Arabian Peninsula (AQAP). LUTCHMAN also maintained a digital collection of documents relating to terrorism and terrorist groups, including all of the issues of "Inspire" magazine, which was an online propaganda magazine published by AQAP, and documents designed to provide guidance to individuals seeking to travel overseas to engage in violent jihad or engage in "lone wolf" terrorist attacks in the United States and elsewhere.

f.   At all times relevant to this case, LUTCHMAN was living in Rochester, New York, and knew that ISIL was a designated foreign terrorist organization, and that ISIL had engaged in, and was engaging in, terrorist activity and terrorism.

### New Year's Eve Attack

g.   In December 2015, LUTCHMAN obtained an online document written by an ISIL member in Syria (hereinafter "ISIL member"). In the document, the ISIL member provided guidance to ISIL supporters who were seeking to travel overseas to join ISIL, including advice about preparation for violent jihad and the use of security measures while traveling to avoid apprehension by law enforcement authorities. The document also included sections about killing the "kuffar" (meaning non-believers or infidels) in their own land and different killing methods. The document stated that ISIL has ordered all those living in the land of the kuffar to rise up and kill the non-believers at their doorsteps, emphasizing that, if one has pledged allegiance to ISIL, then it is a religious duty to obey this order. In addition, the document stated that one does not need to know much to accomplish an attack and that a kitchen knife is sufficient to kill kuffar, and described various killing methods,

including the use of a sword and stabbing with a knife. The document also contained online contact information for the ISIL member and another ISIL member in Syria referred to as "Abu Issa Al-Amriki."

h. On December 25, 2015, LUTCHMAN initiated communications with Al-Amriki, who identified himself as an ISIL member in Syria. In a series of communications on December 25 and 26, 2015, LUTCHMAN asked Al-Amriki what it was like in the Islamic State. Al-Amriki described being with ISIL as a "dream come true." LUTCHMAN expressed his hatred for everything in America, and his intention to make hijra (meaning migration or journey to join ISIL overseas) and leave America, which he described as the land of the kuffar. Al-Amriki stated that the Syrian borders were closed, but should open within a few months, and asked if LUTCHMAN had someone who could vouch for him. Al-Amriki explained that, if LUTCHMAN did not have someone within ISIL who could vouch for him, then LUTCHMAN would have to prove himself and prove that he was one of them (ISIL). LUTCHMAN asked how he could prove himself and confirmed that he was one of them (ISIL). Al-Amriki responded that, among other things, LUTCHMAN would have to prove that he supports ISIL. LUTCHMAN told Al-Amriki that he was thinking a lot about organizing some "brothers" to conduct an "operation for the sake of Allah." When Al-Amriki asked what was stopping LUTCHMAN from doing so, LUTCHMAN responded that he did not want to go back to prison and that he did not have the "funds to bear arms," but funds would be coming very soon. Al-Amriki told LUTCHMAN that all he has to do is plan an attack on New Year's Eve (2015) or whenever he can, and kill a number of "kuffar." Al-Amriki told LUTCHMAN to carry around a weapon and if "something happens kill them all." LUTCHMAN responded that he was arranging an operation with a "brother."

i. Al-Amriki advised LUTCHMAN to write something before the operation and give it to the ISIL member so that after the attack the ISIL member could post it online to announce LUTCHMAN's bayah (meaning oath of allegiance) to ISIL. Al-Amriki told LUTCHMAN that whatever LUTCHMAN sends to ISIL, they would keep it until the operation was completed, and then post it and publicize the attack on the Internet. Al-Amriki emphasized that LUTCHMAN is "behind enemy lines," that LUTCHMAN was the closest person to their most hated enemy (meaning the United States), and that LUTCHMAN has the chance to do things that ISIL wishes it could do. LUTCHMAN ultimately told Al-Amriki that he has a couple of "brothers" that want to make hijra and plan an attack. Al-Amriki encouraged LUTCHMAN to complete an attack and stated that, if the Syrian borders open and the attack does not succeed, he would help LUTCHMAN and his "brothers" make hijra. Al-Amriki told LUTCHMAN to show ISIL how serious he is, stating, "New years is here soon. Do operations and kill some kuffar." LUTCHMAN told Al-Amriki that he hates it in the United States, that he wants to join the ranks of ISIL, and that he is ready to "give

everything up" to be in Syria with ISIL. Al-Amriki told LUTCHMAN, for the time being, to do what he can in the United States.

j. In late December 2015, LUTCHMAN was communicating with Individuals A and B, both of whom, unbeknownst to LUTCHMAN, were cooperating with the Federal Bureau of Investigation (FBI). In these communications, LUTCHMAN made statements expressing his strong support of ISIL and his desire to travel overseas to join ISIL. LUTCHMAN also discussed, in detail, with Individuals A and B his online communications with Al-Amriki and the ISIL member, and the plan to commit an attack in the United States on New Year's Eve 2015. Individual A later arranged for LUTCHMAN to meet Individual C, who, unbeknownst to LUTCHMAN, was also cooperating with the FBI. In subsequent communications, LUTCHMAN referred at various times to Individuals A, B and C as "brothers" who would be involved in the New Year's Eve attack.

k. In a series of communications on December 27, 2015, Al-Amriki asked how LUTCHMAN's operation was going. LUTCHMAN responded that he has "two brothers in Oklahoma" (Individuals A and C) ready and planning the operation, and "another brother" (Individual B) who was ready for the New Year. Al-Amriki suggested that LUTCHMAN and the other participants make videos before the operation, which ISIL could post on the Internet on the ISIL member's channel "to let the world know [ISIL] [is] coming." Al-Amriki stated that Allah has given LUTCHMAN a chance to come closer to him by killing a few thousand on New Year's and "helping brothers." When LUTCHMAN said that he was going to meet with the "brothers" later that day, Al-Amriki told LUTCHMAN to "march forth" toward meeting Allah and, in case he (Al-Amriki) did not "meet these brothers in this world," he would humbly "love to be their neighbors in paradise." LUTCHMAN told Al-Amriki that he was ready to make his sacrifice, that he had been watching videos to get ready, and that there was no turning back from this path. When Al-Amriki reiterated that LUTCHMAN and the "brothers" should make videos to post after the operation, LUTCHMAN responded, "I hear and obey."

l. Later on December 27, 2015, LUTCHMAN sent a message to Al-Amriki asking what would be the best target for the operation. Al-Amriki told LUTCHMAN to find the most populated area(s) and kill as many people as possible. Al-Amriki also reiterated that, after the operation was done, he would vouch for LUTCHMAN and the other participants in the attack and he would start sending "brothers" to ISIL in Libya. LUTCHMAN responded that Libya would be "good for us."

m. In the morning on December 28, 2015, LUTCHMAN met with Individual C for the first time. During the meeting, LUTCHMAN recounted some of his communications with Al-Amriki (including the plan to find the

most populated area(s) and kill as many people as possible). LUTCHMAN stated that his "real intention is to do an act, to get to hijra." LUTCHMAN also said that he wanted to execute the plan so they could be "in and out," noting that they should make it "quiet and simple" so they can go about doing what they need to do to make hijra. LUTCHMAN said that he hates the United States and that he wants to live under the caliphate. LUTCHMAN also said that his connection with ISIL (Al-Amriki) is already established and that they just had to show their allegiance to ISIL. LUTCHMAN confirmed that he was "ready to lose [his] family."

n. In a series of communications on December 28, 2015, LUTCHMAN reported to Al-Amriki that he met early that morning with one of the two brothers from Oklahoma (Individual C) and was waiting to hear from one of the other brothers. Al-Amriki told LUTCHMAN not to share any details with him (Al-Amriki) and to just get the videos of the brothers ready and forward them before the operation. LUTCHMAN agreed to do so. Al-Amriki warned LUTCHMAN not to share the details of the operation in order to prevent law enforcement and/or government authorities from learning those details through interception of their online communications. Al-Amriki further stated that, after the New Year's operation was done and even if the operation is unsuccessful, he would vouch for LUTCHMAN and his associates. Al-Amriki stated that he could start sending brothers to Libya, if they are dark-skinned, but they would have to wait for entry to Syria if they are light-skinned. LUTCHMAN responded that it would be best if they would be sent to Libya. Al-Amriki confirmed that Libya "has openings" and are accepting dark-skinned recruits as long as he (Al-Amriki) vouches for them, and they are financially able to do hijra and ready for jihad. Al-Amriki also told LUTCHMAN not to stop brothers from engaging in operations because ISIL still needed operations to be done in the West.

o. In the evening on December 28, 2015, LUTCHMAN met with Individual C. During the meeting, LUTCHMAN indicated that he wanted to target a club or bar and proposed that they kidnap a couple of people and kill them. LUTCHMAN stated that they would have to wear masks during the operation in order to avoid getting caught by law enforcement authorities. As they drove by Merchant's Grill in Rochester, LUTCHMAN identified it as a potential target of the attack. LUTCHMAN further stated that they would use knives during the attack, and that he had a friend who had a machete.

p. On December 29, 2015, LUTCHMAN had a telephone conversation with Individual A. During the conversation, LUTCHMAN told Individual A that he was about to call his friend so they could go and pick up the machete. Individual A observed that there were only two days until New Year's Eve. LUTCHMAN responded that they needed to get gloves, masks, and zip ties for the attack, noting that they had already selected a target for the attack (Merchant's Grill). Subsequent to this conversation, LUTCHMAN tried

unsuccessfully to obtain a machete from at least one other individual in the Rochester area.

q. In the evening on December 29, 2015, LUTCHMAN and Individual C went to a Walmart store on Hudson Avenue in Rochester to purchase weapons and supplies for the attack. While there, in three separate transactions, they purchased two black ski masks, two knives, a machete, zip-ties, duct tape, ammonia and latex gloves. Individual C paid approximately $40 for these items, but LUTCHMAN stated that he would reimburse Individual C for the funds. After buying the weapons and supplies, LUTCHMAN and Individual C discussed the attack. LUTCHMAN confirmed the location of the attack (Merchant's Grill) and discussed how they would select and abduct a victim. LUTCHMAN stated that "the operation is a go," and noted that any victim(s) would have to be killed. LUTCHMAN and Individual C discussed making a video before the operation, in which they would explain their rationale for the attack (i.e., to take the offensive against the kuffar) and swear bayah to the leader of ISIL, Abu Bakr al-Baghdadi. LUTCHMAN said that he planned to release the video after the completion of the attack.

r. In a series of communications on December 29, 2015, LUTCHMAN told al-Amriki that he just found out that Individual B was "fishy" and that LUTCHMAN suspected that "something is not right with him." Al-Amriki told LUTCHMAN to be careful, but not to stop anyone's jihad. LUTCHMAN responded, "I will not." Later that night, LUTCHMAN sent a communication to Al-Amriki stating that he just left Individual C a few minutes earlier and that he (LUTCHMAN) was going to read an interpretation of the Quran "and get [his] head n soul ready for this operation." LUTCHMAN confirmed that he and Individuals A and C were conducting the operation, as planned. Al-Amriki responded that he did not need the details, but asked if LUTCHMAN would survive the operation. LUTCHMAN said that, if the operation went as planned, he would survive. LUTCHMAN also stated that he was ready to give up this "dunya" (meaning temporal world and earthly possessions) and complete the operation so that he and his brothers could have Al-Amriki vouch for them and they could make hijra the following year. Al-Amriki told LUTCHMAN to "keep a brother u fully trust in touch with me [Al-Amriki], in case things go sideways."

s. In a series of communications on December 30, 2015, al-Amriki asked LUTCHMAN how he was doing. LUTCHMAN responded that he was thinking about all the things that distract him and his ibadah (meaning obedience with submission) to Allah, and what he has to do to remain focused. Al-Amriki responded that doing something for ummah (meaning the Islamic community) brings you closer and that a trip to jihad is equal to

50 hajj (meaning the Islamic pilgrimage to Mecca). LUTCHMAN responded, in Arabic, "praise be to Allah."

t. On December 30, 2015, LUTCHMAN met with Individual C. During the meeting, LUTCHMAN made a video in which he pledged allegiance to ISIL and its leader, Abu Bakr al-Baghdadi, and stated that ISIL was going to establish the caliphate in the land of Islam. In reference to the planned New Year's Eve attack, LUTCHMAN stated, "the blood that you spill of the Muslim overseas we gonna spill the blood of the kuffar," and asked Allah to "make this a victory." In the video, LUTCHMAN had a scarf wrapped around his head, which covered all of his face except for his eyes, and he held one index finger in the air, which is a sign commonly used by ISIL members and supporters. Immediately thereafter, law enforcement agents arrested LUTCHMAN. After the arrest, law enforcement agents recovered the items purchased by LUTCHMAN and Individual C at Walmart the previous day (including the machete, ski masks, knives, and zip-ties) from LUTCHMAN's residence at 120 Fernwood Park in Rochester.

### III.  SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6. The government and the defendant agree that the base offense level is 26. The government and the defendant, however, disagree about which Guidelines section specifically applies to the offense of conviction. The government maintains that Guidelines § 2M5.3(a) applies directly, and the defendant maintains that Guidelines § 2M5.3(a) applies through Guidelines § 2X1.1(a).

## SPECIFIC OFFENSE CHARACTERISTICS

7.  The government and the defendant agree that the following specific offense characteristic does apply:

   a. the 2-level increase pursuant to Guidelines § 2M5.3(b)(1)(E) (offense involved provision of material support and resources with the intent, knowledge or reason to believe they are to be used to commit or assist in the commission of a violent act).

8.  The defendant maintains that the following specific offense characteristic does apply:

   a. The 3-level decrease pursuant to Guidelines § 2X1.1(b)(2) (reduction for a conspiracy not covered by a specific offense Guideline).

The government specifically reserves the right at the time of sentencing to argue to the Court that, even if the Court applies Guidelines § 2X1.1(a) to the offense of conviction, a decrease under Guidelines § 2X1.1(b)(2) does not apply and is not warranted by the facts of this case. In any event, the government and the defendant agree that, whether or not the decrease applies, the recommended Guidelines sentencing range is not affected and, as indicated below, results in the same final Guidelines sentencing range.

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

9.  The government and the defendant agree that the following adjustment to the base offense level does apply:

   a. The 12-level upward adjustment of Guidelines § 3A1.4(a) (offense is a felony that involved or was intended to promote a federal crime of terrorism).

## ADJUSTED OFFENSE LEVEL

10. Based on the foregoing, it is the understanding of the government and the defendant that, if the 3-level reduction under Guidelines § 2X1.1(b)(2) does not apply, the adjusted offense level for the offense of conviction is 40. It is the further understanding of the government and the defendant that, if the 3-level reduction under Guidelines § 2X1.1(b)(2) does apply, the adjusted offense level for the offense of conviction is 37.

## ACCEPTANCE OF RESPONSIBILITY

11. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 37, if the 3-level reduction under Guidelines § 2X1.1(b)(2) does not apply, or a total offense level of 34, if the 3-level reduction under Guidelines § 2X1.1(b)(2) does apply.

## CRIMINAL HISTORY CATEGORY

12. Based on the application of Guidelines § 3A1.4(b), it is the understanding of the government and the defendant that the defendant's criminal history category is VI.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13. It is the understanding of the government and the defendant that, with a total offense level of 37 or 34 and criminal history category of VI, and taking into account the statutory maximum penalties, the defendant's sentencing range would be a term of imprisonment of **240 months**, a **$100 special assessment**, and a **period of supervised release of 1 year to life**. It is the further understanding of the parties that, with a total offense level of 37, the defendant's range for a fine would be **$40,000 to $250,000**, and, with a total offense level of 34, the defendant's range for a fine would be **$35,000 to $250,000**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

14. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The defendant, however, reserves the right to recommend a sentence outside the Sentencing Guidelines range and the government will recommend the statutory maximum of **240 months imprisonment**. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

15. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

16. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to providing, and attempting and/or conspiring to provide, material support to a designated foreign terrorist organization, which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

17. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement, including the amount of a fine and the method of payment, and the length and conditions of a term of supervised release;

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history

category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor; and

e. oppose any application for a downward departure and/or sentence outside the applicable Guidelines range made by the defendant.

18. At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 15-MJ-4212.

19. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI.   APPEAL RIGHTS

20. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court, which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

21. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

22. The government waives its right to appeal any component of a sentence imposed by the Court that includes a sentence of 240 months imprisonment and which falls within or is greater than the sentencing range for a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. TOTAL AGREEMENT AND AFFIRMATIONS

23. This plea agreement represents the total agreement between the defendant, **EMANUEL L. LUTCHMAN**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL, JR.
United States Attorney
Western District of New York

BY: _____
BRETT A. HARVEY
Assistant United States Attorney

Dated: August _11_, 2016

I read this agreement, which consists of 16 pages. I have had a full opportunity to discuss this agreement with my attorney, STEVEN G. SLAWINSKI, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  
EMANUEL L. LUTCHMAN  
Defendant

Dated: August 11, 2016

_____  
STEVEN G. SLAWINSKI, ESQ.  
Attorney for the Defendant

Dated: August 11, 2016