**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

**v.**                                                        **6:16 CR 6071 (FPG)**

**EMANUEL LUTCHMAN,**

                                **Defendant.**
_____

**DEFENDANT'S SENTENCING MEMORANDUM**
**AND REQUEST FOR A NON-GUIDELINE SENTENCE**

Steven Slawinski, Assistant Federal Public Defender for the Western District of New

York, affirms as follows:

1.       I am an attorney licensed to practice law in the State of New York and the United States

District Court for the Western District of New York, and I represent the defendant, Emanuel

Lutchman.

2.       The factual representations made in this Statement are based on investigations by me,

conversations with Emanuel Lutchman and others, a review of the Revised Presentence

Investigation Report [hereinafter PSR] dated January 13, 2017, and the attached exhibits:

       **EXHIBIT A:**  Letter of Acceptance of Responsibility by Emanuel Lutchman

       **EXHIBIT B:**  Letters of Support by Family and Friends

**INTRODUCTION**

3.       Emanuel Lutchman appeared before Your Honor on August 11, 2016, where he pled

guilty to a single count of Conspiracy to Provide Material Support to a Designated Foreign

Terrorist Organization in violation of 18 U.S.C. § 2339B(a)(1). Lutchman plead guilty to the

charge pursuant to a plea agreement.  Following the guilty plea, a PSR was prepared and

disclosed to the parties. Lutchman has been in custody since his arrest on the charge on

December 30, 2015.


**OBJECTION TO THE PRESENTENCE REPORT**

4.      I have reviewed the PSR with Mr. Lutchman and his only remaining substantive

objection is the determination not to apply the downward departure under Sentencing Guideline

§ 2X1.1(b)(2) (PSR ¶ 45). If applied, Lutchman's Offense Level would be decreased by three

levels and would be 34. With a mandatory Criminal History of VI, Lutchman's guidelines would

then be **262-327 months** of imprisonment. This would still be above the statutory maximum of

20 years, but less than the 360 months to life guideline range contemplated by the government

and the PSR.

5.      The PSR found that § 2X1.1(b)(2) should not apply because the downward departure

should not apply in situations where all acts had been completed and the offense would have

occurred but not for apprehension by law enforcement.  In this case, however, it is important to

remember that law enforcement was coordinating with confidential informants working with

Lutchman well before his arrest. For instance, Individual C, who was working with the FBI, paid

for the purchase of knives, zip ties, ammonia, and duct tape at Wal-Mart on December 29.

Without the help of this informant, Lutchman would not have been able to buy these implements

needed to carry out any attack because he had no money to buy them. This is a case where law

enforcement followed and orchestrated several actions <u>well before</u> Lutchman's planned actions

at the Merchant's Grill. This is not a case where law enforcement was unaware of Lutchman's

plans until the last minute and then interrupted him.[1]

6.      Furthermore, the FBI arrested Lutchman more than a day before the planned New Years'

Eve attack. The attack was supposed to occur with the assistance of Individual C, who was

working undercover for the FBI. Without the assistance of Individual C, Lutchman also would

never have been even able to attack and take hostages in a bar full of people wielding a knife and

zip ties. He was reliant on Individual C, who was never really going to assist him in his plans.

Thus, without the assistance of the cooperator, the planned attack could not ever have gotten off

the ground to begin with.

7.      Law enforcement clearly had Lutchman in its crosshairs well before the planned attack on

New Years' Eve.  It utilized confidential informants in this case and effectively "greased the

wheels" as Lutchman was planning his actions. While not a perfect case of entrapment,

Lutchman would have never been able to take any of the substantial actions in the conspiracy

(for example, buying the implements at Wal-Mart, mounting an attack at the restaurant) without

the assistance of Individual C who was working with the FBI.

8.      In determining to apply the reduction under Guideline 2X1.1(b)(2), the Court needs to

consider whether Lutchman completed all of the acts necessary for the substantive offense, not

just the conspiracy to commit the offense. *See United States v. Meader*, 195 F. 3d 66 (1st Cir.

1999). Here, he did not do this precisely because of the involvement of law enforcement. In

*United States v. Downing*, 297 F.3d 52 (2d Cir. 2002), the Second Circuit said that a District

---

[1] See Background Comment, Guideline 2X1.1: "In most prosecutions for conspiracies or
attempts,  the substantive offense was substantially completed or was interrupted or prevented on
the verge of completion by the intercession of law enforcement authorities or the victim.  In such
cases, no reduction of the offense level is warranted.

Court should have granted the reduction where the substantive offense was incomplete. In that case, the reduction should have been applied to defendants who did not commit all of the elements they believed necessary to commit securities fraud. In this case, Lutchman did not complete all of the elements to materially support terrorism, namely using himself to attack people at the Merchant's Grill. Likewise, the Fifth Circuit held that the departure should be applied in *United States v. Waksom*, 179 F.3d 303 (5th Cir. 1999), where significant additional steps were still required in an uncompleted conspiracy to rob an armored car.

9.      Lutchman's case can be distinguished from *United States v. Medina*, 74 F.3d 413 (2d Cir. 1996), where the Second Circuit held that the departure did not apply where robbery conspirators were interrupted by the police before committing their offense. In that case, the Court found that law enforcement did not control how far the crime could progress. In Lutchman's case, it did … especially in light of the intercession and planned actions of Individual C. In *Medina*, law enforcement merely surveilled and arrested, but with Lutchman, they helped move the narrative and conspiracy along. As law enforcement helped Lutchman to complete the conspiracy and it stopped him well short of completing the substantive offense, the Court should apply the reduction of Guideline 2X1.1(b)(2) to Lutchman's case.

## GENERAL SENTENCING AUTHORITY

10.     Under 18 U.S.C. § 3553(a), federal sentencing courts must impose a sentence that is *sufficient, but not greater than necessary*, to meet the purposes of sentencing.[2]  This includes the

---

[2]The purposes of sentencing are identified as:
The need for the sentence imposed –
    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;

4

nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid sentencing disparities between defendants with comparable criminal records who have been convicted of similar crimes, and the Guidelines themselves. *See United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir., 2010) (quoting 18 U.S.C. § 3553(a)(1)-(6)).

11.     The "sufficient, but not greater than necessary" language of § 3553 is commonly referred to as the "parsimony clause." *See United States v. Williams*, 475 F.3d 468, 476 (2d Cir. 2007), *cert. denied*, 552 U.S. 1105 (2008).  When imposing sentence, the district court must consider the factors mentioned in § 3553(a), including the requirements of the parsimony clause. *Id.* Simply stated, if the district court concludes that either of two sentences would properly serve the statutory purposes of § 3553(a), application of the parsimony clause compels imposition of the lesser sentence. *See United States v. Ministro-Tapia*, 470 F.3d 137, 142 (2d Cir. 2006).

12.     The sentencing court must also consider the advisory Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 245-246 (2005).  However, "[e]ven where a district court has properly calculated the Guidelines, **it may not presume that a Guidelines sentence is reasonable for any particular defendant**, and accordingly, must conduct its own independent review of the § 3553(a) sentencing factors." *United States v. Dorvee*, 616 F.3d at 182 (citing *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008), *cert. denied* 129 S. Ct. 2735 (2009) (emphasis added).

13.     The importance of individualized sentencing is a central theme in federal criminal law:

---

(C)     to protect the public from further crimes of the defendant; and
(D)     to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.
18 U.S.C. § 3553(a)(2).

It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, and sometimes magnify, the crime and the punishment to ensue.

*Koon v. United States*, 518 U.S. 81, 113 (1996).

14.   In *Kimbrough v. United States*, the Supreme Court reminded the district courts that:

The sentencing judge . . . has greater familiarity with ... the individual case and the individual defendant before him than the Commission or the appeals court. . . . He is therefore in a superior position to find facts and judge their import under § [3553(a)] in each particular case.
*Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (internal quotations omitted).

## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

15.   Emanuel Lutchman presents a difficult and unique situation to the Court. On one hand, he has pleaded guilty to the serious offense of conspiring to support a terrorist organization, ISIL, which has plotted against American interests and committed terrible acts against its citizens. On the other hand, he was extremely susceptible to its influence by virtue of his serious mental health issues, low intelligence and chaotic upbringing. Finally, the Court needs to consider that the intended end of this crime itself – committing a terrorist attack at a popular Rochester bar on New Years' Eve – never had the ability to be carried out without the aid and assistance  who were working with law enforcement.

16.   **In light of all of these factors, discussed below, Lutchman would request a below-guideline sentence of 10 years of confinement in this case.**  This is more than enough punishment for his crime and is in keeping with the factors enumerated in 18 U.S.C. § 3553(a)(2).

*The Reasonableness of the Guidelines*

17.     The Court cannot rely on the reasonableness of the sentencing guidelines, especially in this case. Here, if the government and the PSR's guideline calculations were deemed correct, Lutchman's guidelines would be far above the statutory maximum of his offense – by a factor of at least 50%. Even if the Court applies the defense-requested sentencing reduction of § 2X1.1(b)(2), Lutchman's guidelines would still be well above the statutory maximum.

18.     This is certainly not the worst case of a criminal defendant supporting a terrorist organization. Lutchman gave ISIL no money and had no resources other than himself to give. Lutchman also was arrested without incident well before the planned attack could take place. Lutchman's plans themselves were not rooted in reality, with Lutchman stating that he had hoped to survive any attack and then board a flight to Libya (he had no money for an airline ticket or a passport). There were no firearms used or discussed in the planning of the proposed attack, and Lutchman was described by the owner of the Merchant's Grill as pejoratively an "aggressive panhandler"[3]. Clearly, Lutchman lacked the ability to carry out any attack at the restaurant or join ISIL in the Middle East. He is not the dangerous "terrorist" that his guidelines would have you believe.

19.     Lutchman's guidelines compound a high Base Offense Level and upward departures upon an artificially high Criminal History Level. The defense is not disputing the applicability of the guidelines in the plea agreement, but does argue that it exaggerates his actions in committing this offense. A thirty-year sentence is incompatible with the § 3553(a) factors here, as is a 20

---

[3] See "Alleged ISIS Sympathizer was 'Aggressive Pandhandler'", Rochester Democrat and Chronicle, December 31, 2015, available at: http://www.democratandchronicle.com/story/news/2016/01/01/alleged-isis-sympathizer-also-loiterer/78151274/

year sentence. In this case, Lutchman's conduct resulted in no harm and law enforcement was able to easily apprehend him without incident. He was not financing terrorism with any money, nor was he able to complete the offense because of the involvement of the FBI.

20.     The Court should consider that the 12-level enhancement in the PSR for "promoting a federal crime of terrorism" (PSR ¶ 46) is applied together with the 28-level base offense level of guideline 2M5.3(a) (PSR ¶ 44). Both guidelines contemplate terrorism, but yet both are still applied. While courts have previously rejected double-counting arguments if both were applied, this Court should consider that the enhancement for "promoting" a federal crime of terrorism is exactly what Lutchman did. Furthermore, "providing material support" to a terrorist organization "for a terrorist purpose" is the heading for guideline 2M5.3 and guideline 3A1.4 is also an enhancement for actions "intend[ing] to promote … a federal crime of terrorism."

21.     Combined with the enhancements in this case, Lutchman's Criminal History Category is increased to VI only by virtue of his Base Offense Level. If this were almost any other case, his Criminal History Level would remain at IV and his guidelines would be lower. If his Adjusted Offense Level were 34 (as stated above), his guidelines would be 210-262 months, still at the statutory maximum for this offense. Thus, his criminal history is also driven up two categories by reason of his offense.

22.     The statutory maximum for the offense of 18 U.S.C. § 2339B(a)(1) is 20 years. Because the PSR calculated his guidelines well above this, 20 years becomes his de facto guidelines (PSR ¶ 74). However, term was increased recently. Until June 2, 2015, the statutory maximum for this offense was **15 years**. It was increased to 20 years six months before Lutchman's offense. In this case, Lutchman's actions do not warrant a sentence at the statutory maximum, whether it be 15 or 20 years.

23.     The Court should not give much weight to the guidelines in this case. Their application

distorts Lutchman's actions and criminal history. They unreasonably increase his sentence

beyond what is needed or called for in the § 3553(a) factors. Recent history is informative in this

respect. In the past five years, the drug and crack cocaine guidelines have been lowered by the

Sentencing Commission, and the child pornography guidelines are routinely regarded by courts

as being too severe. The Court should not assume that Lutchman's guidelines are inherently

reasonable or represent a fair, individualized sentence for him and his offense.

***Other Cases Relating to ISIL***

24.     Lutchman's actions in conspiring to support a foreign terrorist organization do not call

for sentence at the top of the statutory maximum for the offense. Similar defendants have

recently been sentenced to less time than 240 months for supporting ISIL. Some of these

defendants include the following:

|  |  |
|---|---|
| Name: | **Donald Ray Morgan** |
| District: | MDNC |
| Charges: | 2339B and 18 U.S.C. § 922(g)(1) |
| Sentence Date: | May 14, 2015 |
| Sentence Imposed: | 180 months + 63 months = 243 months |

Morgan, a previously convicted felon, sold an AK47 and another assault rifle to an FBI
source.  Later, Morgan flew to Beirut, Lebanon where he used social media to encourage
support  for ISIS fighters.  Morgan flew from Beirut to Istanbul, Turkey hoping to enter Syria
and join  ISIS.  He was denied entry to Turkey.  He returned to Beirut and became more
vocal in his  support for ISIS culminating in an interview on NBC Nightly News.  He was
ultimately arrested  at JFK airport upon his return to the U.S.

|  |  |
|---|---|
| Name: | **Leon Nathan Davis** |
| District: | SDGA |
| Charges: | 2339B |
| Sentence Date: | July 28, 2015 |

Sentence Imposed:     180 months

Davis, a previously convicted felon and parolee, used social media to post support for ISIS. Davis purchased a one-way ticket from Atlanta to Istanbul, Turkey hoping to travel from Turkey to Syria to join ISIS.  Davis illegally possessed 7 different firearms (including long guns and hand guns) in his home after his arrest.

|  |  |
|---|---|
| Name: | **Michael Todd Wolfe** |
| District: | WDTX |
| Charges: | 2339B |
| Sentence Date: | June 5, 2015 |
| Sentence Imposed: | 82 months |

Wolfe applied for and acquired a U.S. Passport in hopes of engaging in violent jihad. He purchased airline tickets to travel from Houston, Texas to Europe.  His plan was to meet an individual (undercover FBI employee) whom Wolfe believed would assist him travel to Syria through Turkey.

25.     Notably, most prior cases involving defendants supporting ISIL and charged under the same statute were sentenced under the old 15-year statutory maximum. Because of this, there would be an unjust sentencing disparity if the Court were to sentence Lutchman to more than the 15-year sentence other-similarly situated defendants received.

26.     Lutchman's actions also are far less drastic than the recent case of Mufid Elfgeeh, a Rochester convenience store owner who was sentenced for the same offense in this district in 2016.[4] In that case, the parties agreed to a sentence of 270 months, or 22 ½ years, for a defendant who possessed firearms and silencers with the intent to kill American servicemen returning home from Iraq.

27.     Elfgeeh's crime was far more severe because it involved firearms, silencers, a more defined plan and he had the ability to actually carry out his plans. According to his indictment,

---

[4] *United States v. Mufid Elfgeeh*, Western District of New York Docket # 6:14 CR 6147 (EAW)

Elfgeeh attempted to provide material support to ISIL in the form of three individuals, two of whom were cooperating with the FBI. Elfgeeh attempted to assist all three individuals in traveling to Syria to join and fight on behalf of ISIL. Elfgeeh also plotted to shoot and kill members of the United States military who had returned from Iraq. As part of the plan to kill soldiers, Elfgeeh purchased two handguns equipped with firearm silencers and ammunition from a confidential source.

28.     Lutchman's offense did not involve firearms or silencers and he did not have the resources to send himself or others to join ISIL. Lutchman's plans were ill-conceived and the implements were purchased by a cooperating informant. He was a panhandler, not a business owner like Elfgeeh. For these reasons, the Court should not issue a sentence that is on-par with Elfgeeh's 22 ½ year sentence for a much more serious and deliberate offense.

### *Lutchman's Personal Characteristics*

29.     Emanuel Lutchman is a 26-year-old man who has lived an abject life. His mother died in a car accident when he was two years old. After that, he was shuffled around between Rochester, New York City and Syracuse, Georgia, and Florida, living with various relatives, including his grandmother, Beverly Henry. When he was six years old, he was hit by a car, which, according to Mrs. Henry, changed his mental state. Lutchman first tried marijuana when he was 8 years old and started to drink heavily at 15. Eventually, he dropped out of school in the 8th grade because of his learning disabilities and unstable life.

30.     Lutchman's extensive mental health issues began to manifest themselves when he was 14. At that point, he tied a belt around his neck and tried to kill himself. From there, he was eventually diagnosed with personality disorders, bipolar disorder, severe depression, and

recurring suicidal ideation. His mental health issues continued to plague him from this early

point. He was hospitalized several times and had several mental hygiene arrests in the years

preceding the offense. He also spent time in-patient at the Elmira Psychiatric Center. In 2015,

before his arrest, Lutchman was hospitalized when he stabbed himself in the abdomen after he

got into an argument with his wife. He still has a deep scar from this incident across his torso.

31.     Given Lutchman's history, it is no wonder that he was easily influenced by ISIL and

radical Islam. While he was incarcerated in the New York DOC for a 2006 robbery conviction,

he became interested in Islam and converted to that religion. Previously, Lutchman was a

member of a street gang, and in the DOC he believed that Islam gave his life purpose and its

practitioners protected him. However, the Islam he was exposed to in the DOC was radical and

he was easy prey for the other inmates who were preaching it. In the DOC, Lutchman learned

Arabic and memorized the Quran. He became a believer in this religious extremism and carried it

with him when he left custody in 2013.

32.     Following his release from the DOC, Lutchman lived a rootless existence in Rochester,

but felt somewhat anchored by the Islam he learned in prison. Ultimately, his unstable mental

health and indoctrination in the DOC led him to support ISIL and commit the instant offense.

This was the perfect storm of someone with severe mental health issues and a need to belong

somewhere succumbing to a violent ideology that falsely gave him a purpose in life. Lutchman is

not an individual who rationally had a plan and resources to carry out a violent attack – he is a

sick, marginalized person who was grasping at straws to find a purpose in his chaotic life.

33.     Lutchman has accepted responsibility for his actions and has turned his back on radical

Islam. His acceptance of responsibility letter is contained at PSR ¶ 42 and attached at **EXHIBIT**

**A.** Lutchman now lives for his son, Za'vion, who is two years old. Lutchman knows that his son

will have to grow up without him being there as his father, and this hurts him greatly. However, he has channeled his energy into staying alive and one day being a father to Za'vion, after he has served his punishment.

34.     Lutchman's family and relatives also will be there to support him. They have written letters of support attached as **EXHIBIT B.**


### *The Offense Itself*

35.     The Court should recognize the serious of Lutchman's offense, but should be careful not to be swayed by visceral reactions or fear in determining a sentence. Certainly, ISIL is a terrorist organization that has done terrible things and has made itself clear that it is an enemy of the United States. However, Lutchman's crude plans were quickly intercepted by the FBI and he never really had the ability to act on them. Lutchman is a scrawny, 160 lbs. young man with mental health issues and an 8th grade education who never really had the power to single-handedly orchestrate a terror attack in a crowded bar with a knife and zip ties.

36.     At the time of his arrest, the local media in Rochester covered his case extensively. However, it sensationalized the risk of his case. Consider that the Merchant's Grill stayed open on New Years' Eve, as Lutchman was arrested by then and was the *only* threat against the restaurant.

37.     The PSR defined "terrorism" (PSR ¶ 40), but the media itself can become an unwitting accomplice in these acts by sensationalizing inept plots by people like Lutchman. Yes, the public has a right to be alerted to risks and made aware of safety concerns. However, the goal of the terrorist is met when worry and anxiety pervades the populace. The FBI always had Lutchman's actions in control, and after his quick arrest, there was no more risk or danger to anyone.

38.     Lutchman has renounced ISIL and has now seen its empty promise. He has seen that ISIL is not something that can give him purpose or direction in his life; it is a dead end. It is probable that ISIL will not exist in 10 or 15 years, just like other terrorist organizations have sooner or later come to their end.

39.     The Court needs to apply the law in this case and base its sentence in reason. As Aristotle stated, "The law is reason, free from passion." Emanuel Lutchman is simply asking this Court for a reasonable sentence, based on his offense, his history and characteristics, and the guidance contained in 18 U.S.C. § 3553(a).

**CONCLUSION**

40.     Based on the above, in consideration of the §3553(a) factors, specifically, the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed, and the kinds of sentences available, it is respectfully requested that the Court sentence Emanuel Lutchman to a term of **10 years of incarceration, followed by a significant term of supervised release, with a requirement that he attend a mental health evaluation and treatment.** Furthermore, Lutchman would request that the Court recommend that the Court recommend that the BOP place him as close to Rochester, New York as possible.

Dated:  January 20, 2017

Steven Slawinski
Assistant Federal Public Defender
Federal Public Defender's Office
28 E. Main Street, Suite 400
Rochester, New York 14614
(585)263-6201
Steven_slawinski@fd.org
Attorney for Emanuel Lutchman

# Exhibit A

I begin this letter with peace be upon you Your Honor. I'm sitting in this cell thinking of all the truthful words i can say to you in this letter. A whole lot has changed since last year and now I dont view the world the same as i did before I was arrested on december 30th. I no longer ascribe to a political islamic ideology anymore. I begin to interpet islam in a more softer represantation within my life.

I want more than death or incarceration I want to live life with a more fulfilling purpose. a life of peace. To be honest i have'nt gain that type of an earthly exsistence in all the days of my young adult years. Besides my life long battle with my mental illness, I had to deal with abandonment issues that lead to me finding role models in the streets, to looking at terrorist as an wrong example to follow. I was never certain on this path i didnt really want to tread.

I wanted to escape the nightmeres i was living on a daily basis. I had multiple death wishes the latest one i tried to end my life with a knife in front of my family. This plot was a twisted intentioned i wish i never had created in my heart and mind. in all honesty i want to live for a child i left out there to grow without his father. His name is Za'vion Hopkins, 2 yrs old and one of the most intelligent and handsome baby ever born. His cause i redirected my fows to. I'm on my mental health meds that helps stable my thinking patterns now and i see life through a positive reflection Radical islamic ideology i want to keep buried in my life's past. I can't see it as a life style i wish to live in my present and future. I end this in hopes you will see the growth in me, it's my redemption

From
   Emanuel Lutchman

# Exhibit B

2607 E. Palifox  Street

Tampa, Florida 33610.

October 30, 2016


To Hon. Frank P. Geraci, Jr.

U. S District Court Judge

U. S Courthouse

100 State ST.

Rochester, NY 14614


My name is Beverley Henry the grandmother of Emanuel Lutchman. I raised Emanuel from he was two years till he was 14 years. His mother died when he was two years old. When he was 6 years old he was hit by a car and broke his femur bone he was not the same mentally. At age 10 he was diagnosed with ADHD and was put on medication and therapy. His great grandmother and great grandfather died a few years apart and he became very depress. He loved his great grandparents very much. He went to Rochester and had a difficult time there then he had another car accident which makes his behavior worst. At 15 he ran away from home and live in the streets of Rochester and when he was 16 he went to prison and was rape. That is when he became a Muslims for protection. He was brought up in a christiann home. He tried to commit suside in prison twice. He did not need to be in prison, he should be in a mental institution where he could get help. I was shock when I heard that he was charge as a terrorist. I was even shocker when he makes a plea deal to the charges. I was very disturbed because I never heard him talk as a radical terrorist. Emanuel easily led by people he taught is his friend and people take disadvantage of him.  I am aware of the gravity of his plea.

Despite his challenges Emanuel loves his family. I know that he loves me and he is worried about me. He is a loving and honest young man. He is a good father to his 3years old son. He was a stayed home dad while his wife work.

 On his good days Emanuel loves to help people whenever he can. We talked a lot and we had a lot of fun together. He is my world. I love him as my own son. I am sad and my heart is broken. I can't let him know how I feel because he will get more depressed.

I am asking the court to give him lenience. I know that he was setup by the people he called his friends. He is not a Terrorist and he is not a killer. My grandson needs mental help not prison. I pray to God that the court will have mercy on him.

The plans he has for the future is to have other children and to do his own business so he can take care of his family and to buy me a big house. My plans always include Emanuel.

 I am very sorry for what they are saying about him. With all his ups and down he is not a bad person. He will not take a life. He is a very trouble young man. I am asking the court to please take these issues into

consideration and please be lenient on his sentence. I could go on and on about my love for him but I do not want to take up much of your time.


I thank you in advance

Beverley Henry

*Beverley Henry*

Delroy Carridice
2318 Chancery Drive
Holiday, FL 34690

October 30, 2016

Hon. Frank P. Geraci, Jr
U.S. District Court Judge
U.S. Courthouse
100 State Street
Rochester, NY 14614

Re: Emmanuel Lutchman Sentencing

To Honorable Judge Geraci, Jr,

My name is Delroy Carridice, and I am writing this letter on behalf of my nephew Emmanuel Lutchman. I've known my nephew since he was born and he was a happy baby, at the age of 2 ½ his mother passed away so he went to live with his grandmother Beverley Henry until he was about (14) fourteen years old.  When Emmanuel was (6) six years old he was in a car accident, after this incident he has never been the same. He started acting out, throwing temper tantrums, having loud outbursts.

Emmanuel started to see a therapist who later diagnose him with ADHD, he was place on medication to help with his mental state; my nephew has tried his best to function as normal as possible with his condition but It has been a real challenge because he do not comprehend or process things like the average individual. My nephew is a very loving person and a wonderful father to his child, even with his mental challenges. Its has not been a easy road for him and yes we all make mistakes, but I'm in total shock and disbelief to hear that Emmanuel has pleaded guilty to Conspiracy to Support Terrorism, that is not my nephew no way would he do such a thing as supporting terrorism.

Watching my nephew grow up I've come to see at times where is lack of understanding makes him very susceptible, easily turned and easily manipulated. I beg the court leniency for my nephew Emmanuel Lutchman, He is NOT A TERRORIST in no shape or form, please help him to get the medical attention he so desperately needs; this situation has taken such a toll on our family, I Thank you in advance for your consideration.

Respectfully,

*D. Carridice*

Delroy Carridice

102 E. Patterson Street apt 101

Tampa FL 33604

Oct 30th 2016

Hon. Frank P. Geraci, Jr

U.S. District Court Judge

U.S. Courthouse

100 State St.

Rochester, NY 14614


I am Doreen Mowatt have known Emanuel since he was 2 years old. I have known Emanuel to be a very impressive young man, kind, loving and caring.

The Emanuel that I know would not have Pleaded guilty to such act, unless he was corers or felt treat by someone.

Emanuel cares and loves his family especially his son and grandmother Beverley. He is kind, loving, caring, honest, outgoing person and friendly and likeable despite his mental challenges.

When his son was born, he makes every effort to make sure his son was taken care of. He stayed home to take of his son while his wife work.

I believe that Emanuel should receive leniency, because I don't think he committed such a crime, further he had mental issues. He doesn't need to go to prison. He need mental help and the love of his family and friends.

Emanuel plans is to open a health food store so he can take cares of his family, especially his son and grandmother Beverley.

Thanks, in advance

Doreen Mowatt.

**newwoman504** <newwoman504@yahoo.com>                     Tue, Oct 4, 2016 at 3:53 PM
To: Beverley Carridice-Henry <fekerte59@gmail.com>

Hon. Frank P. Gracia, JR
US Court House
100 State Street
Rochester, New York

I am writing to wage leniency in the sentencing of my Nephew Emanuel Lutchman.

I have known Emanuel all of his life.  I am aware of the gravity of his crime he was
convicted of but it is very hard for me to understand.  This is not my nephew I know.

Emanuel has always been there for his family willing to lend a helping hand with
everything that we could.
I have noticed that Emanuel has fell into a deep depression after his great grandmother
died.

I personally believes that he have some mental issues that were never addressed.

Please take this letter into consideration.

Sincerely
Carmen Harris

8/17/16

To whom it may concern I starkeisha Boatwright is herby giving this statement regarding Emanel Lutchman who is my fiance son. I have been with his father six years counting. I have witness dramatic behavioral issues, confussion about what is going on around him, depression, distress, feelings of not being loved, easily influenced by others. On several occasions Emanuel has asked me for support during that time he did not know how to cope about things that was happening in his life, but during those times we have grew a very strong bond. I have noticed somedays he is ok and somedays when he is not ok, he will seek mental help for harming himself. I am asking if the courts can please consider lowering Emanuel Lutchman sentence on the behalf of knowing him he is a good father, a goodson, grandson and most of all a good person. who child hood →over

was difficult then others. Emanuel family
or himself has never conducted in terrorism
since I have known them. When I
heard about this I was in shock
because I know deep down inside he
was on his off days to support his
son. I hope this statement give the
benefit of the doubt for Emanuel
Lutchman.

Sincereiously
Sharkeisha Boatwright

August 19,
2016

To whom it may concern,

My Name is Ruby Lutchman. I am
one of Emanuel Lutchmans, many siblings.
I am writing you concerning my Brother,
because I do not believe that whats going on
with his case is fair.

Yes my Brother made a few bad choices
but no more nor less than the next man.
So I do not think communicating with potential
terrist organizations is unppropriate but he did
not harm any one. He did not intend to go through
with this bogus plan.

My Brother is emotionally unstable and
it is not fair that individuals took advantage
of him and manipulated him at low point in
his life.

My Brother is not a terrist, He is a
young man that made a mistake, a bad choice.
He is a son, a brother, a uncle, and a father
those are the labels he deserve not "terrist".
Thank you for your time and consideration.

        - Ruby Lutchman-

To whom it may concern,

I Omar Lutchman is the father of Emanuel Lutchman. Since childhood Emanuel has battled with Depression and has exhibited signs of Mental Health issues. If you obtain his school records from P.S. 45 (Brooklyn N.Y.) and the school he attended in Syracuse N.Y. it will show instances of outburst and being disruptive. At the age of fifteen he ran away from home and attempted suicide. When Emanuel turned sixteen he was arrested twice for Robbery. The outcome of those cases was a five year sentence in New York state correctional services. Upon arriving in Elmira correctional facility he attempted suicide again. If someone gets incontact with the schools and prison system, these issues I stated can be verified. The latest scientific data indicates that the human brain does not fully develop until twenty-one. I believe New York state correctional services should have placed him in a medium security prison with children his age. Instead the prison system placed him in Clinton correctional facility. He was transfered their because they have a Mental health unit; But their are Mental Health units in Medium security prisons. In those facilities his needs could have been addressed in a safer environment. Emanuel was raised a Christian, when he arrived in Clinton correctional facility he became a muslim, I hope and pray that Emanuels

documented mental issues will be considered
in his case. THANK you for your time and
PatiENCE.

yours truly
Omar Litchmon